IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 2, 2015

**STATE OF TENNESSEE V. TRAVARIOUS DEJAUN WHITE**

**Appeal from the Circuit Court for Madison County
No. 12-549     Nathan B. Pride, Judge**

_____

**No. W2014-01348-CCA-R3-CD  -  Filed August 7, 2015**

_____

A Madison County Grand Jury indicted the Defendant, Travarious Dejaun White, on one count of carjacking, two counts of aggravated robbery, and one count of felony evading arrest. The incident leading to the Defendant's arrest occurred on August 26, 2007. Following a jury trial, the Defendant was convicted of all charged offenses. The trial court sentenced the Defendant to eight years for carjacking, eight years each for both counts of aggravated robbery, and one year for felony evading arrest. The court ordered all sentences to be served consecutively, for a total effective sentence of twenty-five years. On appeal, the Defendant challenges the sufficiency of the evidence supporting his conviction for carjacking and aggravated robbery. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Lee R. Sparks, Jackson, Tennessee, for the Appellant, Travarious White.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Jerry Woodall, District Attorney General; and Benjamin Mayo, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Background

On August 26, 2007, between 10:00 and 10:30 p.m., James Walker picked up Natalie Bouie from her job at Red Robin. Mr. Walker then drove to a parking lot behind North Side School, where he and Ms. Bouie stepped out of the vehicle to talk. As the two talked, a man approached them and asked what time the last bus would arrive. Mr. Walker informed the man that the last bus had already departed.

After turning to leave, the man quickly turned back around, pulled out a black handgun, and announced that he was robbing the couple. Mr. Walker ran from the scene in an effort to lead the assailant away from Ms. Bouie. However, the assailant caught up with him and forced Mr. Walker to hand over his wallet, his cell phone, and the keys to his green GMC Denali Yukon. The assailant then stepped into the Denali and drove off with Mr. Walker's belongings around 10:45 p.m. Ms. Bouie's purse, left inside the vehicle, was also taken when the assailant drove away.

Following the robbery, Mr. Walker and Ms. Bouie walked to a gas station and called the police. At approximately 11:00 p.m., Officer Jerod Cobb of the Jackson Police Department responded to the call. After meeting the victims at the gas station, he issued a be on the lookout (BOLO) for the stolen vehicle.

Sergeant Shane Barnes of the Madison County Sheriff's Department was on patrol the night of the robbery. At approximately 11:05 p.m., shortly after receiving the BOLO dispatch describing Mr. Walker's stolen vehicle, Sergeant Barnes observed a vehicle matching the description turning from Sweetbay Drive onto North Parkway heading east. Sergeant Barnes pursued the vehicle. The driver of the vehicle attempted to turn west onto Allen Avenue at a high rate of speed but lost control and crashed, flipping the stolen vehicle several times. Sergeant Barnes witnessed the crash from approximately 200 to 300 feet away.

As he approached the accident, Sergeant Barnes witnessed a single individual emerge from the wrecked vehicle and flee the scene. Sergeant Barnes pursued the individual on foot but was unable to apprehend him.

Lieutenant Mike Turner of the Jackson Police Department supervised the collection and documentation of evidence from the scene of the crash. Along with a camouflage colored hat and a black handgun, Lieutenant Turner collected three blood swabs from the vehicle.

Less than twenty-four hours after the robbery, Mr. Walker and Ms. Bouie were shown a photo lineup including a photograph of the Defendant. Neither victim was able to positively identify the man who robbed them from the lineup.

At trial, Mr. Walker and Ms. Bouie both testified to being within arm's length of their assailant. They recalled that the man who robbed them wore a camouflage hat with a soft, full brim, similar to the hat recovered at the scene of the wreck. Both victims testified that their assailant wore his hat pulled down low on his head. Additionally, both victims stated that their assailant carried a black handgun similar to the gun recovered from Mr. Walker's vehicle. When asked to describe their assailant, Mr. Walker and Ms. Bouie admitted to being scared and to focusing primarily on the weapon being pointed at them. However, they both described the man as approximately five feet six to five feet seven inches tall, with a slender build and dark complexion. Neither victim noticed any facial hair on the assailant.

Though neither victim could say positively whether the defendant was the man who robbed them on August 26, 2007, Mr. Walker testified that his assailant was of a similar height and build as the Defendant. Mr. Walker also testified that, prior to the robbery, there were no blood stains, camouflage hats, or handguns in his vehicle.

Captain Mike Holt of the Jackson Police Department testified that in August 2007, he worked in the department's Violent Crimes Unit and was assigned with investigating the case. Captain Holt testified that the Tennessee Bureau of Investigation (TBI) Crime Lab was able to generate a DNA profile based on blood swabbed from the front center console of Mr. Walker's vehicle. However, at the time, the profile did not match any existing profiles in the TBI database.

In March 2012, the TBI notified Captain Holt of a DNA match to the 2007 DNA sample taken from Mr. Walker's vehicle. The match identified the Defendant as the source of the DNA collected from Mr. Walker's stolen vehicle. Captain Holt testified that on March 15, 2012, he obtained a search warrant for a buccal swab of the Defendant. He testified that he collected the buccal swab from the Defendant and that the TBI's subsequent testing of the swab confirmed the Defendant as the source of the DNA from the stolen vehicle.

Special Agent Charles Hardy, supervisor of the TBI's DNA data base, was qualified as an expert witness in the area of DNA collection and matching. He testified that the sample taken from the victim's vehicle in 2007 matched the sample taken from the Defendant in 2012. Agent Hardy confirmed that the Defendant's blood was in the victim's vehicle following the 2007 crash.

Following the testimony of Agent Hardy, the State concluded its case. The Defendant then elected not to testify, and the case was submitted to the jury, which returned a verdict of guilty as to all charges.

**Analysis**

On appeal, the Defendant challenges the sufficiency of the evidence as it relates to identity for his convictions of carjacking and two counts of aggravated robbery. In support of his argument, the Defendant concedes that he was in Mr. Walker's stolen vehicle at the time it crashed, resulting in his blood and DNA being left at the scene of the accident but argues that the DNA evidence shows only that the Defendant was in the vehicle at the time of the crash and that this, in and of itself, does not substantiate the State's claim that the Defendant committed the crimes of carjacking and aggravated robbery. The Defendant stresses the victims' inability to positively identify him as their assailant less than twenty-four hours after the robbery occurred. The State argues that the DNA evidence, along with the victims' testimony describing their assailant, was sufficient evidence to support the conviction. We agree with the State.

The applicable standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and the Appellant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

In order to sustain a conviction, "the proof must be sufficient to support each and every element of the conviction offense." State v. Parker, 350 S.W.3d 883, 909 (2011). A reviewing court must examine each element of the offense of which the defendant stands convicted and determine if each element is supported by sufficient evidence. Id. "If the proof does not adequately support each and every element, the defendant is entitled to a reversal of the conviction." Id. The identity of the perpetrator "is an essential element of any crime." State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006). Identity may be established with circumstantial evidence alone, and the "jury decides the weight to be given to circumstantial evidence, and [t]he inferences to be drawn from such evidence . . . ." Id. (internal quotation marks omitted). The question of identity is a

question of fact left to the trier of fact to resolve. State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

In a jury trial, the weight and credibility given to the testimony of witnesses, as well as the reconciliation of conflicts in that testimony, are questions of fact best determined by the jury, because it saw and heard the witnesses, and by the trial judge, who concurred in and approved the verdict. Bland, 958 S.W.2d at 659. This court will not reweigh the evidence. Id. On review, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

Tennessee Code Annotated section 39-13-401(a) (2006) defines robbery as "the intentional or knowing theft of property from the person of another by violence or by putting the person in fear." A robbery is aggravated when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-402(a)(1) (2006).

The crime of carjacking is defined in Tennessee as "the intentional or knowing taking of a motor vehicle from the possession of another by use of: (1) [a] deadly weapon; or (2) [f]orce or intimidation." Tenn. Code Ann. § 39-13-404(a) (2006).

Here, the Defendant has failed to show that no rational trier of fact could find he committed the crimes of aggravated robbery and carjacking beyond a reasonable doubt. He argues that the evidence is only sufficient to establish his presence in Mr. Walker's stolen vehicle at the time it crashed. However, the direct and circumstantial evidence is sufficient to establish that the Defendant both robbed the victims and stole their vehicle. The DNA evidence clearly places the Defendant inside the stolen vehicle at the time it crashed. Because the vehicle wrecked less than twenty minutes after being taken from Mr. Walker and Ms. Bouie, a rational trier of fact could reasonably infer that the Defendant stole the vehicle from the victims.

Additionally, the victims testified that their assailant wore a camouflage hat and carried a black handgun at the time of the robbery. The presence of these items at the scene of the crash, moments after the Defendant fled the vehicle, lends further support to the jury's conclusion that the Defendant robbed and carjacked Mr. Walker and Ms. Bouie. Also, Sergeant Barnes testified that he only witnessed a single person fleeing the stolen vehicle after it crashed. A reasonable trier of fact could infer from this testimony, and from the evidence collected at the scene, that the Defendant robbed the victims and was the sole occupant of the vehicle at the time it crashed.

Finally, the Defendant complains of the victims' inability to positively identify him as their assailant less than twenty-four hours after the robbery occurred. However, the jury heard the testimony of both Mr. Walker and Ms. Bouie that the fear induced by the Defendant's weapon prevented them from focusing on what the Defendant looked like beyond his basic physical characteristics. At trial, the Defendant sat in full view of the jury, and the jury concluded that the Defendant fit the victims' description of their assailant.

## Conclusion

After careful review, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR, JUDGE